**Nicholas J Henderson, OSB #074027**
nhenderson@portlaw.com
**Troy G. Sexton, OSB #115184**
tsexton@portlaw.com
Motschenbacher & Blattner LLP
117 SW Taylor St., Ste. 300
Portland, OR  97204
Phone: 503-417-0500
Fax:  503-417-0521

Of Proposed Attorneys for Debtor-in-Possession

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF OREGON

| | |
|---|---|
| In re:<br><br>CREATIVE LIGHTING SOLUTIONS, INC.,<br><br>Debtor. | Case No. 19-34296-pcm11 |

### NOTICE – LBR 9019-1(B)

PLEASE TAKE NOTICE: If you oppose the proposed course of action or relief sought in the attached motion, you must file a written objection with the bankruptcy court within 14  days after the date listed in the certificate of service below. If you do not file an objection, the court may grant the motion without further notice or hearing. Your objection must set forth the specific grounds for objection and your relation to the case.

The objection must be received by the clerk of the court at United States Bankruptcy Court, 1050 SW 6th Avenue, #700, Portland, OR 97204, by the deadline specified above or it may not be considered. You must also serve the objection on Nicholas J. Henderson, Motschenbacher & Blattner LLP, 117 SW Taylor Street, Suite 300, Portland, OR 97204, within that same time. If the court sets a hearing, you will receive a separate notice listing the hearing date, time, and other relevant information.

{00319748:1}

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

**Nicholas J Henderson, OSB #074027**
nhenderson@portlaw.com
**Troy G. Sexton, OSB #115184**
tsexton@portlaw.com
Motschenbacher & Blattner LLP
117 SW Taylor St., Ste. 300
Portland, OR 97204
Phone: 503-417-0500
Fax: 503-417-0521

Of Proposed Attorneys for Debtor-in-Possession

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF OREGON

| | |
|---|---|
| In re:<br><br>CREATIVE LIGHTING SOLUTIONS, INC.,<br><br>Debtor. | Case No. 19-34296-pcm11<br><br>DEBTOR'S APPLICATION FOR AUTHORIZATION TO EMPLOY BANKRUPTCY COUNSEL (Motschenbacher & Blattner LLP) |

Creative Lighting Solutions, Inc., (the "Debtor"), as debtor-in-possession, hereby moves this Court for entry of an order authorizing it to employ Motschenbacher & Blattner LLP ("M&B") as its general bankruptcy counsel in this case. In support of this application, the Debtor represents:

### BACKGROUND

1.      On November 20, 2019, (the "Petition Date"), the Debtor filed herein a voluntary petition under Chapter 11 of the Bankruptcy Code. The Debtor is continuing in the management and possession of its business and properties as debtor-in-possession under sections 1107 and 1108 of the Bankruptcy Code. As of the date hereof, no trustee or examiner has been requested

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

or appointed in this case, and the United States trustee has not appointed an official committee of creditors.

2.      The Debtor is an Oregon corporation licensed in the state of Oregon. Debtor specializes in the manufacturing and installation of LED lighting products for businesses and venues throughout the Portland metropolitan area.

3.      M&B commenced rendering prepetition bankruptcy services to the Debtor on October 23, 2019. The details concerning M&B's engagement as bankruptcy counsel, and the payments made to M&B in connection with that engagement, are disclosed in the accompanying Rule 2014 Statement.

## JURISDICTION

4.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and LR 2100-1. Consideration of this application constitutes a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A). The statutory predicates for the relief sought by this application are sections 327(a) and 1107 of the Bankruptcy Code. Venue is proper under 28 U.S.C. § 1408.

## RELIEF REQUESTED

5.      By this application, the Debtor seeks entry of an order, effective as of the Petition Date, authorizing it to employ M&B as its general bankruptcy counsel in this Chapter 11 case on an hourly basis. A proposed form of order is attached as **Exhibit 1**.

## POINTS AND AUTHORITIES

6.      Subject to further order of this Court, and without being exhaustive, the Debtor proposes to engage M&B for purposes of (i) consulting with it concerning the administration of the case, (ii) advising it with regard to its rights, powers and duties as a debtor in possession, (iii)

DEBTOR'S APPLICATION FOR AUTHORIZATION TO EMPLOY
BANKRUPTCY COUNSEL (Motschenbacher & Blattner LLP)

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

{00314692:2}

investigating and, if appropriate, prosecuting on behalf of the estate claims and causes of action belonging to the estate, (iv) advising it concerning alternatives for restructuring its debts and financial affairs pursuant to a plan or, if appropriate, liquidating its assets, and (v) preparing the bankruptcy schedules, statements and lists required to be filed by the Debtor under the Bankruptcy Code and applicable procedural rules.

7.     The Debtor has selected M&B for the reason that it believes the firm is well qualified to represent it in this case. M&B has substantial expertise in matters relating to bankruptcy and business reorganizations.

8.     The proposed rate of compensation, subject to this Court's approval, is the customary hourly rates in effect when services are performed by the attorneys and other firm personnel who provide professional services to the Debtor. The current hourly rates, which may be adjusted periodically, for persons presently designated to work on this case are as follows:

| Name | Status | Hourly Rate |
|---|---|---|
| Nicholas J. Henderson | Partner | $400.00 |
| Troy G. Sexton | Associate | $335.00 |
| Jeremy Tolchin | Associate | $315.00 |
| Sean Glinka | Associate | $315.00 |
| Legal Assistants and Paralegals | Legal Assistant | $85.00 to $150.00 |

9.     To the best knowledge of the Debtor, except as disclosed in the accompanying Rule 2014 Verified Statement for M&B, M&B does not have any connections with the Debtor, creditors, any other party in interest, their respective attorneys or accountants, the United States trustee or any person employed in the office of the United States trustee, or any District of Oregon bankruptcy judge.

DEBTOR'S APPLICATION FOR AUTHORIZATION TO EMPLOY BANKRUPTCY COUNSEL (Motschenbacher & Blattner LLP)

{00314692:2}

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

10.     To the best knowledge of the Debtor, M&B is a disinterested person within the meaning of section 101(14) of the Bankruptcy Code and does not represent or hold any interest adverse to the interests of the estate or of any class of creditors or equity security holders.

WHEREFORE, the Debtor requests entry of an order in the form attached hereto as **Exhibit 1**, effective as of the Petition Date, authorizing it to employ M&B as its general bankruptcy counsel in this Chapter 11 case in accordance with, with compensation and reimbursement of expenses to be paid as an administrative expense in such amounts as the Court may allow under sections 330 and 331 of the Bankruptcy Code.

CREATIVE LIGHTING SOLUTIONS, INC.

DATED: November 21, 2019          /s/ Mike Bernards
                                  By:  Mike Bernards
                                  Its:  President

DEBTOR'S APPLICATION FOR AUTHORIZATION TO EMPLOY
BANKRUPTCY COUNSEL (Motschenbacher & Blattner LLP)

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

{00314692:2}

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF OREGON

In re                                    )
                                         ) Case No. _____
                                         )
                                         ) RULE 2014 VERIFIED STATEMENT
Debtor(s)                                ) FOR PROPOSED PROFESSIONAL

**Note:** To file an amended version of this statement per ¶19, file a fully completed amended Rule 2014 statement on LBF #1114 and clearly identify any changes from the previous filed version.

1. The applicant is not a creditor of the debtor except:

2. The applicant is not an equity security holder of the debtor.

3. The applicant is not a relative of the individual debtor.

4. The applicant is not a relative of a general partner of the debtor (whether the debtor is an individual, corporation, or partnership).

5. The applicant is not a partnership in which the debtor (as an individual, corporation, or partnership) is a general partner.

6. The applicant is not a general partner of the debtor (whether debtor is an individual, corporation, or partnership).

7. The applicant is not a corporation of which the debtor is a director, officer, or person in control.

8. The applicant is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor.

9. The applicant is not a person in control of the debtor.

10. The applicant is not a relative of a director, officer or person in control of the debtor.

11. The applicant is not the managing agent of the debtor.

12. The applicant is not and was not an investment banker for any outstanding security of the debtor; has not been, within three years before the date of the filing of the petition, an investment banker for a security of the debtor, or an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the debtor; and is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of such an investment banker.

13. The applicant has read 11 U.S.C. §101(14) and §327, and FRBP 2014(a); and the applicant's firm has no connections with the debtor(s), creditors, any party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee, or any District of Oregon Bankruptcy Judge, except as follows:

Case 19-34296-pcm7   Doc 23   Filed 11/25/19

14. The applicant has no interest materially adverse to the interest of the estate or of any class of creditors or equity security holders.

15. Describe details of all payments made to you by either the debtor or a third party for any services rendered on the debtor's behalf within a year prior to filing of this case:

16. The debtor has the following affiliates (as defined by 11 U.S.C. §101(2)). Please list and explain the relationship between the debtor and the affiliate:

17. The applicant is not an affiliate of the debtor.

18. Assuming any affiliate of the debtor is the debtor for purposes of statements 4-13, the statements continue to be true except (list all circumstances under which proposed counsel or counsel's law firm has represented any affiliate during the past 18 months; any position other than legal counsel which proposed counsel holds in either the affiliate, including corporate officer, director, or employee; and any amount owed by the affiliate to proposed counsel or its law firm at the time of filing, and amounts paid within 18 months before filing):

19. The applicant hereby acknowledges that he/she has a duty during the progress of the case to keep the court informed of any change in the statement of facts which appear in this verified statement. In the event that any such changes occur, the applicant immediately shall file with the court an amended verified statement on LBF #1114, with the caption reflecting that it is an amended Rule 2014 statement and any changes clearly identified.

THE FOLLOWING QUESTIONS NEED BE ANSWERED ONLY IF AFFILIATES HAVE BEEN LISTED IN STATEMENT 16.

20. List the name of any affiliate which has ever filed bankruptcy, the filing date, and court where filed:

21. List the names of any affiliates which have guaranteed debt of the debtor or whose debt the debtor has guaranteed. Also include the amount of the guarantee, the date of the guarantee, and whether any security interest was given to secure the guarantee. Only name those guarantees now outstanding or outstanding within the last 18 months:

22. List the names of any affiliates which have a debtor-creditor relationship with the debtor. Also include the amount and date of the loan, the amount of any repayments on the loan and the security, if any. Only name those loans now outstanding or paid off within the last 18 months:

23. List any security interest in any property granted by the debtor to secure any debts of any affiliate not covered in statements 20 and 21. List any security interest in any property granted by the affiliate to secure any debts of the debtor not covered in statements 21 and 22. Also include the collateral, the date and nature of the security interest, the name of the creditor to whom it was granted, and the current balance of the underlying debt:

24. List the name of any affiliate who is potentially a "responsible party" for unpaid taxes of the debtor under 26 U.S.C. §6672:

I verify that the above statements are true to the extent of my present knowledge and belief.

_____
Applicant

In re: Creative Lighting Solutions, Inc.
Case No.: 19-34296-pcm11

## Continuation Statement No. 13

     1.      Pacific Office Automation is a creditor in the case. Applicant purchases office equipment from Pacific Office Automation and has an open account as an ongoing customer for copier supplies. Balances are paid to zero on a monthly basis.

     2.      The spouse of one of Applicant's partners works for Columbia Sportswear, which is an affiliate of a potential creditor and party in interest in the case.

# EXHIBIT 1

# PROPOSED ORDER

{00314692:2}

UNITED STATES BANKRUPTCY COURT

DISTRICT OF OREGON

| | |
|---|---|
| In re:<br><br>CREATIVE LIGHTING SOLUTIONS, INC.,<br><br>Debtor. | Case No. 19-34296-pcm11<br><br>ORDER AUTHORIZING EMPLOYMENT OF COUNSEL FOR DEBTOR<br><br>(Motschenbacher & Blattner  LLP) |

THIS MATTER having come before the Court on the application of Creative Lighting

Solutions, Inc., Debtor-in-Possession ("Debtor"), for an order authorizing it to employ

Motschenbacher & Blattner LLP ("M&B") as attorneys for Debtor [Docket No. ___] (the

"Application") to represent the Debtor as debtor-in-possession herein; and the Court being

advised that M&B represents no interest adverse to the Debtor as debtor-in-possession herein

(except as disclosed in the second amended Rule 2014 Verified Statement on file herein) on the

matters upon which the firm is to be engaged, that the firm's employment is necessary and would

be in the best interest of the estate; and the Court being otherwise fully advised,

ORDER AUTHORIZING EMPLOYMENT OF BANKRUPTCY
COUNSEL FOR DEBTOR (Motschenbacher & Blattner LLP)

{00314692:2}

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

IT IS HEREBY ORDERED as follows:

1) Debtor's Application is approved, and Debtor is authorized to employ the law firm of Motschenbacher & Blattner LLP as of the Petition Date as Debtor's Chapter 11 counsel to represent Debtor in conducting the case;

2) The terms and conditions of M&B's employment, as set forth in this Order and in the Bankruptcy Attorney/Client Fee Agreement attached as **Exhibit A**, are approved, except as modified by this Order, as follows:

    a. Of the $50,000 minimum fee, earned upon receipt retainer, $40,000 shall be designated as the minimum fee, earned upon receipt retainer, and $10,000 shall be designated as the "risk fee" for services in the event of a conversion of the case to one under Chapter 7;

    b. The $40,000 minimum fee, earned upon receipt retainer is subject to a review for reasonableness and possible disgorgement as permitted under 11 U.S.C. §§ 329, 330. M&B's allowed fees shall be deducted first from its $40,000 earned-upon receipt retainer, and then from cash collateral under the terms of any applicable cash collateral order.

    c. The $10,000 "risk fee" shall be credited to approved but unpaid fees to M&B for Chapter 11 services upon entry of an order confirming the plan and, in the event of a conversion of the case to one under Chapter 7, subject to a review for reasonableness and possible disgorgement as permitted under 11 U.S.C. §329

3) The Debtor shall pay said attorneys for their services, and shall reimburse expenses incurred by said attorneys, only upon the entry of an order of the Court approving such fees and expenses under 11 U.S.C §§ 330 and 331, and other applicable provisions of the Bankruptcy

ORDER AUTHORIZING EMPLOYMENT OF BANKRUPTCY COUNSEL FOR DEBTOR (Motschenbacher & Blattner LLP)

{00314692:2}

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

Code and Local Bankruptcy Rules. This Order shall be effective only if the firm to which it

applies is a "disinterested person" as defined by 11 U.S.C. §101(14)

### ###

Order Presented by:

MOTSCHENBACHER & BLATTNER, LLP

/s/ Nicholas J. Henderson
Nicholas J. Henderson, OSB #074027
Telephone: 503-417-0500
E-mail: nhenderson@portlaw.com
Of Proposed Attorneys for Debtor-in-Possession

**PARTIES TO SERVE**

**ECF Electronic Service:**
All parties registered to receive
notice via CM/ECF.

**Service via First-Class Mail:**
NONE

Page 3 of 3    ORDER AUTHORIZING EMPLOYMENT OF BANKRUPTCY
               COUNSEL FOR DEBTOR (Motschenbacher & Blattner LLP)

{00314692:2}

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

Case 19-34296-pcm7    Doc 23    Filed 11/25/19

**EXHIBIT A**

**ENGAGEMENT MATERIALS**

{00314692:2}



Nicholas J. Henderson
Admitted in Oregon and Washington
Direct: 503-417-0508
nhenderson@portlaw.com
www.portlaw.com

October 23, 2019

**Via Email: mbernards@gocreativelighting.com**
Creative Lighting Solutions, Inc.
Michael Bernards, President
17700 SW Upper Boones Ferry Road
Portland, OR 97224

      Re:    New Client Information

Dear Mike:

Thank you for choosing me to represent Creative Lighting Solutions, Inc. ("Creative Lighting") in connection with its Chapter 11 Bankruptcy. I appreciate this opportunity to serve Creative Lighting's legal needs, and I look forward to working with you during the course of this representation.

This letter, the attached Bankruptcy Attorney-Client Fee Agreement, and the enclosed "Information for Clients" explains our fee structure, policies, and office procedures. By retaining this office, you agree to be bound by the terms set forth in this enclosure. I have also enclosed a document titled "Attorney-Client Privilege," which contains information on the preservation of the confidential nature of our relationship with you.

As we discussed, we require a $51,717.00 retainer deposit from you in connection with this matter. Creative Lighting's retainer will be placed in our client trust account, and we will draw against the funds on deposit to pay our invoices for fees and expenses incurred prior to the bankruptcy filing. Once the bankruptcy is filed, we will only draw from the retainer after obtaining approval from the Bankruptcy Court. Additional information on our client trust procedures is enclosed.

Currently, my time is charged at $400.00 per hour and hourly rates for associates range from $285.00 to $315.00. The hourly rates for legal assistants range from $85.00 to $150.00.  I will utilize associates and legal assistants as much as appropriate to keep your legal bill as low as possible. Additional information about my firm's hourly rates and expense policy is included in the Bankruptcy Attorney-Client Fee Agreement.

My direct dial telephone number is 503-417-0508. That number will always reach me or my voice mailbox. You can leave messages at that number at any time. If you reach my voice mailbox but would prefer to speak to an operator, press 0. I do my best to return all telephone calls within 24 hours. Again, please feel free to contact me on my cell phone if you cannot reach me at the office.

If I am unavailable and you need immediate help, please call my assistant, Mary, and she will try to reach me or arrange for another attorney in the firm to contact you. Mary's direct dial number is 503-417-0511. Mary also has access to my calendar and can schedule appointments for you.

We have found that our effective representation of a client's interest is critically dependent upon a foundation of mutual trust and confidence. If there is ever a concern regarding the progress of any matter we are handling, or if anyone has any questions regarding our statements, please do not hesitate to contact me.

If the terms and conditions of our representation are acceptable, please sign the attached Bankruptcy Attorney-Client Fee Agreement, and a signed copy of this letter, and return it to my office. I will follow up with additional correspondence about the records and materials we need to prepare and file the bankruptcy case.

Very truly yours,

Motschenbacher & Blattner LLP

Nicholas J. Henderson

*SIGNATURE PAGE FOLLOWS*

October 23, 2019
Page 3

I agree to the terms and conditions of engagement set forth above, and in the attached documents:

CREATIVE LIGHTING SOLUTIONS, INC.

*Mike Bernards*
_____
Michael Bernards, President


NJH/mep
Enclosures

# BANKRUPTCY ATTORNEY-CLIENT FEE AGREEMENT
## (Chapter 11)

**CLIENT:**      **Creative Lighting Solutions, Inc.**

**ATTORNEY:**   **Nicholas J. Henderson**

**FIRM:**        **Motschenbacher & Blattner LLP ("Firm")**

**DATED:**       **October 23, 2019**

Client desires to retain Attorney for, but not limited to, the purposes described in this Agreement and agrees to be responsible for payment of the Attorney's fees and costs as established in this Agreement. Attorney agrees to represent Client under the terms and conditions of this Agreement and to be compensated at the rates set forth in this Agreement.

Client requests and the Attorney agrees to render professional services, including (a) giving the Client legal advice with respect to its business operations; (b) assisting the Client in any proposed reorganization of its business; (c) if authorized, filing an appropriate petition for relief under Title 11 of the United States Bankruptcy Code; (d) giving the Client legal advice with respect to its powers and duties in any proceeding in bankruptcy; (e) proposing on behalf of the Client all necessary applications, answers, orders, reports or other legal papers; and (f) performing for the Client any and all other legal services which may be necessary in connection with the filing of any petition or proceeding in bankruptcy.

Client and Attorney agree that the Attorney's compensation for services performed pursuant to this Agreement shall be the Attorney's customary hourly rates in effect at the time the services are performed for the Attorneys, legal assistants, and staff who provide services for the Client. At the time of the execution of this Agreement, the current hourly rates are as follows:

| Name | Status | Hourly Rate |
|---|---|---|
| Nicholas J. Henderson | Partner | $400.00 |
| Troy G. Sexton | Associate | $335.00 |
| Jeremy Tolchin | Associate | $315.00 |
| Sean Glinka | Associate | $315.00 |
| Legal Assistants and Paralegals | Legal Assistant | $85.00 to $150.00 |

These hourly rates are subject to periodic adjustment to reflect economic conditions and increased experience and expertise in this area of law. Attorney's time and paralegal time is billed in minimum 0.10 hour increments. Client will be provided with itemized monthly statements for services rendered and expenses incurred, which will be mailed on approximately the 10th of each calendar month.

Doc ID: c88ceeb7751ece086832dd4d9cef8d65ae70889c

**Fees**.   Attorney and Client agree that the actual fees to be incurred in the case are difficult to predict, because of a variety of factors, many of which are not within the control of Attorney or Client. Attorney and Client acknowledge that the Bankruptcy Court is entitled to review Attorney's fees for reasonableness. The Bankruptcy Court may reduce the amount of the fees billed in such amount that it determines reasonable based on the totality of the circumstances, including a consideration of the reasonableness of the fees based on the circumstances which existed at the time the employment began, as well as a consideration of the reasonableness of the fee after the services have been rendered and the representation has concluded. If the Bankruptcy Court requires a reduction in the amount of any fees charged, Attorney and Client agree that all other terms and conditions of this fee agreement shall continue to apply.

Client agrees to pay a retainer fee of **$51,717.00** for Attorney's engagement, which shall be paid in advance and deemed earned upon receipt or, in the exercise of Attorney's discretion, deemed earned on any subsequent date prior to the date Client's Chapter 11 case is filed. The fee shall be applied as indicated in this Agreement. Based on a variety of factors and confidential discussions between Attorney and Client subject to an Attorney/Client privilege, Attorney and Client agree that the earned on receipt retainer is a reasonable estimate of the minimum amount of fees Attorney will expend in the case.

In recognition of the risk that exists in any Chapter 11 case that the Chapter 11 case may not be successful and, if not successful, that the case will be converted to Chapter 7, and in further recognition that Attorney will have the obligation to provide services to the Client during the course of a Chapter 7 case in the event of conversion to Chapter 7, Client desires to provide payment for such risk in advance.  Client and Attorney acknowledge that current bankruptcy law prohibits payment of the Attorney for Chapter 7 services from the funds of a Chapter 7 bankruptcy estate.  Client and Attorney reasonably agree and project that the fees likely to be incurred by Attorney in a converted Chapter 7 case will likely not be less than **$10,000**.  In recognition of such potential future liability, Client and Attorney agree that a sum of **$10,000** is reasonable advance compensation to Attorney for the risk assumed by Attorney of services to be performed in a possible future Chapter 7 case.  Attorney and Client further agree that the sum of **$10,000** shall be allocated from the retainer paid to compensate Attorney for the risk of providing services in a future Chapter 7 case, and that such **$10,000** shall be deemed earned on receipt by Attorney as payment for the risk of having to perform services in a potential future Chapter 7 case.

Further provided that upon the occurrence of the Effective Date of any confirmed plan of reorganization in Debtor's case, the "Risk Fee" shall be credited to any approved but unpaid Chapter 11 fees owing to Attorney, and any unused amount will be refunded to the Debtor.

Attorney and Client agree that the existence of this Agreement shall be adequately disclosed to the Court and other interested parties, including but not limited to the United States Trustee. As set forth elsewhere in this Agreement, Attorney shall have the option to require Client to perform various mailings and advance other significant costs as they become due from the Client's ongoing income.

Case 19-34296-pcm7    Doc 23    Filed 11/25/19
Doc ID: c88ceeb7751ece086832dd4d9cef8d65ae70889c

In addition to the foregoing hourly rates, Client agrees to be responsible for payment of all costs incurred in representing the Client. Examples of such costs include filing fees, court reporter fees, long distance telephone, photocopies (whether made in the Attorney's office or an outside printing service), etc. The Attorney's "Expense Policy Statement" is attached as Exhibit "A." A quarterly fee based on disbursements is assessed by the Office of the US Trustee on all Chapter 11 debtors. A copy of the US Trustee's fee schedule is attached. Client is responsible for payment of the quarterly fees.

Client has been informed and acknowledges that Attorney has no responsibility to hire outside professionals such as appraisers, accountants, bookkeepers, expert witnesses, etc., unless those costs are paid in advance by the Client to the Attorney.

All professionals must also be approved by the Bankruptcy Court before starting work, or the Court will deny payment to the professional. Client acknowledges it has been informed of the Court's rule requiring the filing of a "Monthly Operating Report" (Rule 2015 Report) on the Court's form by the 21st day of each succeeding month. The form of such report will be separately provided to the Client. The Client assumes all responsibility for providing Attorney's office with all information necessary to prepare the report not later than the 14th day of the calendar month.  Failure to timely file these reports can result in dismissal of the Chapter 11 proceeding.

Attorney shall have the option, but not the duty, to proceed with representing Client prior to payment of the above described retainer. If Attorney performs services prior to receipt of the retainer, the Attorney may withdraw from representing the Client at any time prior to payment of the agreed retainer.

Client agrees to cooperate with Attorney, to complete all forms requested by the Attorney and to provide the Attorney with all information necessary to enable the Attorney to represent the Client's best interests. If Client unreasonably declines to cooperate, or should knowingly provide the Attorney with false or fraudulent information or testify untruthfully in any matter before the Court, the Client agrees that Attorney shall have the right to immediately resign. If permitted by law, should either party find it necessary to take steps to enforce this Agreement, the costs of doing so, including reasonable Attorney fees both before trial, at trial or after appeal, as determined by the Court, will be borne by the losing party.

Client acknowledges that Attorney has advised that the actual Attorney's fees and expenses, considering the size and complexity of case, will be substantial. Client acknowledges that the Attorney has advised that under the rules of the Bankruptcy Court, the Attorney has the right to submit an application for payment of fees to the court in accordance with the court's rules, which will be done as frequently as court rules permit. Such petitions for fees, when approved, will be paid from the Client's post-petition income.

Attorney strives to keep Client informed of the work Attorney is performing, and Attorney stands ready to explain its services and invoices to Client's satisfaction. If Client ever has questions regarding Attorney's charges, please let Attorney know immediately so that Attorney can attempt to resolve any concerns fairly and without delay. Also, if Client has a

particular need relative to Attorney's invoicing (e.g., the billing format or timing of delivery), please let Attorney know and Attorney will try to accommodate the Client.

Client may terminate the attorney/client relationship at any time and for any reason by delivering to Attorney a written notice of termination. Attorney also reserves the right to terminate the attorney/client relationship, by delivering to Client a written notice, if Client fails to pay Attorney when due any amount Client owes Attorney, if Client fails to cooperate with Attorney or to disclose to Attorney material information, or if for any other reason Attorney feels Attorney is unable to continue an effective attorney/client relationship, in each case, to the extent permitted by the applicable rules of professional conduct, and subject to any applicable rules requiring notice and Court approval. Upon any termination, Client will remain liable for all fees, costs and expenses incurred prior to the termination of the attorney/client relationship. Upon termination, Attorney will provide Client with the original or a copy of all Client's files in Attorney's possession, retaining a copy for Attorney in Attorney's discretion and at Attorney's cost. Once Attorney's representation is terminated, Attorney will have no obligation to inform Client of due dates, subsequent developments or the like, or to maintain any documents or dockets relating to Client's matters.

Attorney appreciates the opportunity to serve as Client's attorneys and anticipates a productive and harmonious relationship. If, however, Client becomes dissatisfied for any reason with the services Attorney has performed or Client disputes any of the fees, costs or expenses charged by Attorney, Attorney encourages Client to bring that dissatisfaction or dispute to Attorney's attention at the earliest possible time. Most problems should be rectifiable through such communication. However, should a dispute arise between Attorney and/or Client which cannot be resolved in that manner, then the Bankruptcy Court will resolve the dispute.

A solid attorney/client relationship is a two-way street. Lawyers need timely and complete cooperation and assistance from their clients just as clients need timely and complete cooperation and assistance from their lawyers. Attorney will therefore endeavor to keep Client informed of Client's matters as they progress. Similarly, Client agrees to provide Attorney with timely responses to requests for documentation and information and to make available to Attorney personnel in order that Attorney may effectively carry out its function as Client's attorneys. Bear in mind that if Attorney does not obtain such cooperation, the quality of Attorney's representation may suffer and Attorney may feel constrained to withdraw from any further work.

**THE ATTORNEY DOES NOT UNDERTAKE TO GIVE THE CLIENT TAX ADVICE. CLIENT AGREES TO CONSULT ITS OWN ACCOUNTANT OR COMPETENT TAX COUNSEL, WITH RESPECT TO ALL TAX ISSUES.**

---

*SIGNATURE PAGE FOLLOWS*

DATED:          10 / 29 / 2019


ATTORNEY:                               CLIENT:

MOTSCHENBACHER & BLATTNER, LLP          CREATIVE LIGHTING SOLUTIONS, INC.

                                                    *Mike Bernards*
By: _____             By:_____
        Nicholas J. Henderson, Partner          Michael Bernards, President


Attachments:                                       Initial If Rec'd:

          A.    Expense Policy Statement (Exhibit A)        _____

          B.    U.S. Trustee Quarterly Fee Schedule        _____

Doc ID: c68ceeb7751ece086832dd4d9cef8d65ae70889c

EXHIBIT "A"

Attorney's Expense Policy Statement

| | |
|---|---|
| <u>Photocopies</u>: | $0.10 per page (in house) |
| <u>Fax</u>: | Incoming No Charge; outgoing (including long distance) at actual telephone charges. |
| <u>Outside Services</u>: | All outside entity bills are charged at actual cost. |
| <u>Postage</u>: | Postage, express mail and other overnight delivery or air courier services are charged at actual cost. |
| <u>Long Distance</u>: | Long distance telephone charges are billed to Clients at actual cost. |
| Computerized <u>Research</u>: | Actual (i.e., invoiced) cost. Time associated with computerized research to be specifically identified on attorney time detail. |
| <u>Travel</u>: | Travel expenses are actual and Air fare is coach or economy class only. Other expenses are actual and do not include limos. Mileage is charged at the rate of allowed for federal tax deductions. |
| Other Personnel <u>Charges</u>: | Secretarial overtime is charged to Clients at $30.00 per hour if the overtime work is due to time constraints mandated by the case or the Client, not to exceed the employee's actual hourly compensation cost to the firm. |
| <u>Pacer</u>: | Actual cost ($0.10 per page). |
| <u>Other</u>: | Any charges not mentioned above will be charged in accordance with the applicable U.S. Bankruptcy Court Cost Guidelines contained in Bankruptcy Rule 2016. |

Doc ID: c88ceeb7751ece086832dd4d9cef8d65ae70889c

**POST-CONFIRMATION REPORTS**

Confirmation is the court's approval of a plan of reorganization.  The Bankruptcy Code and Rules require the debtor to file a Post-Confirmation Quarterly Report for every post-confirmation calendar quarter, including the quarter in which the plan was confirmed and the quarter in which the debtor files its application for final decree.  11 U.S.C. § 1106(a)(7) and Fed. R. Bankr. P. 2015(a)(5).  More frequent reporting may be requested on a case-by-case basis.

**REPORTS IN CASES CONVERTED TO CHAPTER 7**

The debtor must file a schedule of unpaid debts incurred after commencement of the Chapter 11 case, within 14 days after entry of an order converting the case to Chapter 7; and a final report and account, within 30 days after entry of the order converting the case.  Fed. R. Bankr. P. 1019(5)

**STATUTORY QUARTERLY FEES**

A Chapter 11 debtor must pay quarterly fees to the United States Trustee until the case is dismissed, converted, or closed by final decree.  28 U.S.C. § 1930(a)(6). The Code further provides that for a plan to be confirmed, all quarterly fees must be paid timely or the plan must provide for payment of all fees on the effective date of the plan.  11 U.S.C. § 1129(a)(12).  The debtor's failure to timely pay quarterly fees is cause for conversion or dismissal of a Chapter 11 case. 11 U.S.C. § 1112(b)(4)(K).

The fee for each calendar quarter is based on total payments or disbursements made by the debtor's estate during the quarter, including payments made by another party for the debtor.  The fee is calculated as follows:

**NEW STATUTORY FEE SCHEDULE**
**Effective January 1, 2018**

| If disbursements for the calendar quarter are within these amounts. . . | | Then the quarterly fee due is. . . |
|---|---|---|
| **From** | **To** | |
| -0- | $14,999.99 | **$325** |
| $15,000 | $74,999.99 | **$650** |
| $75,000 | $149,999.99 | **$975** |
| $150,000 | $224,999.99 | **$1,625** |
| $225,000 | $299,999.99 | **$1,950** |
| $300,000 | $999,999.99 | **$4,875** |
| $1,000,000 | **or more** | **1% of quarterly disbursements or $250,000 whichever is less.** |

| For calendar quarter ending . . . | A fee payment is due on . . . |
|---|---|
| March 31 . . . . . . . . . . . . . . . . . | April 30 |
| June 30 . . . . . . . . . . . . . . . . . . . | July 31 |
| September 30 . . . . . . . . . . . . . . . | October 31 |
| December 31 . . . . . . . . . . . . . . . | January 31 |

Send your payment and quarterly fee payment stub *ONLY*

* * * * *

Any disbursement stubs, monthly operating reports, correspondence, court notices, etc., sent to the lockbox **will be destroyed**.

Case 19-34296-pcm7    Doc 23    Filed 11/25/19
Doc ID: c68ceeb7751ece086832dd4d9cef8d65ae70889c

# ATTORNEY-CLIENT PRIVILEGE

Communications between lawyers and their clients are generally privileged. Disclosure of confidential communications between a lawyer and client cannot be compelled at trial or in a deposition.

The evidentiary privilege attaching to attorney-client communications is a significant advantage in open communications with our clients. Neither you nor we can be compelled to testify regarding privileged communications, and in most cases we are ethically prohibited from disclosing your secrets and confidences without your consent.

You should be aware, however, that the attorney-client privilege is easily lost. **Any voluntary disclosure of a significant part of a privileged communication will waive the privilege**. For example, if you show a letter from your lawyer to a non-client business associate or relative, the privilege may be destroyed and the communication could become subject to discovery and examination at trial. Oral disclosure or forwarding an e-mail may also destroy the privilege.

In order to preserve the privilege, we and you must take reasonable precautions to avoid disclosure. We therefore discourage discussion of confidential information over cellular or portable telephones (including retrieval of confidential voice mail messages by cellular telephone). Our office voice mail system is secure, but caution requires that voice mail messages not include confidential information. Internet communications (e-mail) should be encrypted or limited to non-confidential matters.

We are ethically and legally obligated to maintain your confidences and keep your secrets. We will do so. Attorney-client confidentiality is second nature to those of us in the business of providing legal services. This memorandum is to ensure that you, too, are aware of the importance of maintaining our communications in confidence in order to preserve the privilege and ensure that disclosure of our communications cannot be compelled.

Please let us know if you have questions about the nature of the attorney-client privilege.

# INFORMATION FOR CLIENTS

MOTSCHENBACHER & BLATTNER LLP is pleased to have the opportunity to serve you. This memorandum contains information about our standard client service practices and billing procedures that will apply to your account unless we have agreed otherwise in writing. Your request of legal services from MOTSCHENBACHER & BLATTNER LLP indicates your acceptance of these terms. We strive to ensure that legal services are delivered effectively, efficiently, and professionally and that all billings are accurate and understandable. Please feel free to call us with any questions you may have.

## Personnel

One lawyer will be assigned primary responsibility for your legal needs. Additional lawyers may assist from time to time when appropriate. We assign lawyers and other personnel on the basis of experience, expertise, and the nature and scope of the issues. This provides you with an appropriate level of expertise within the firm while minimizing the cost to you. We also utilize law clerks, paralegals, and legal assistants to perform routine services, such as information gathering, form preparation, and research. These services are supervised by an experienced attorney, but can be billed at substantially lower rates.

## Conflicts of Interest

The ethical rules governing the conduct of attorneys include specific limitations relating to conflicts of interest. We will always comply with all ethical rules and will undertake our role with the highest integrity. As a result, we have performed a name check of our other clients to determine if our representation of you would create such a conflict of interest. That check was done using your name and other names you provided before we commenced working with you. Please inform us immediately if you use other names or have affiliated companies that you want entered into our conflicts system.

## Basis for Fees

Our fees are based upon a variety of factors, depending on the nature of the representation. The principal factor is usually time spent on the matter. You should expect to be charged for all time devoted to the initial consultation through the conclusion of the project, including office conferences, telephone discussions, correspondence, review of documents and correspondence, research, travel, and any other time expended on your behalf. Other factors, in addition to time, can include the novelty and difficulty of the questions involved; the experience,

reputation, and abilities of the lawyers serving you; past investment in developing files and data; the amount at issue; the results obtained; and time limitations imposed by you or by the circumstances of the matter. Hourly rates of our lawyers and legal assistants reflect fees generally charged in the Northwest based on the lawyers' experience and expertise. Premium rates will apply to rush projects. We may modify our rates from time to time and will provide you notice of any change. A statement of rates is available at any time upon request.

## Costs and Expenses

M&B may from time to time advance or incur costs and expenses on your behalf that we will charge to you. Examples include court filing fees, deposition or transcript fees, investigator's fees and expenses, consulting or expert witness fees and expenses, title company reports, long distance telephone charges, photocopying, printing, computerized legal research, travel expenses, messenger services, project staff, legal assistant overtime, postage, and other similar costs. We do not seek to profit on these types of expenses, but rather charge on a cost (including labor and overhead) recovery basis only. Out-of-pocket expenses paid to third parties on behalf of our clients are charged to the client without markup except as may be necessary to recover related labor and overhead. Although out-of-pocket expenses are your responsibility and we assume no liability for payment, M&B may act on your behalf by advancing payment to these providers if your account is current. We will consult with you prior to entering into any commitments for substantial expense items.

For administrative convenience, if a client has multiple matters open with our firm, costs and expenses may be charged to the general matter account unless other arrangements are requested.

## Estimates

Clients sometimes request estimates of the fees and costs, and we are pleased to provide a good faith estimate of the amounts that are likely to be involved. However, most legal work is inherently unpredictable, and the total time, fees and costs that will be required to complete a project is subject to many factors beyond our control. Our estimates, therefore, are not binding bids or limitations on the fees and expenses involved. Any fixed fee or other fee limitation agreement must be in writing.

## Retainer Deposits

Retainer deposits are required for various types of representation to partially secure payment of fees and expenses. Retainer deposit moneys received from you will be placed in our client trust account, which conforms to the rules and regulations of the Oregon and Washington State Bars relating to IOLTA-Interest on Lawyer's Trust Accounts. If you have a retainer on deposit with us, we will draw against it to satisfy our monthly statements for legal services rendered and out-of-pocket expenses. We reserve the right to request additional retainer deposits as needed. If a request for an additional retainer deposit is not satisfied within the time specified, we reserve the right to withdraw from representing you.

## Privacy Policy

Attorneys, like other professionals who advise on personal financial matters, are now required by federal law to inform clients of their policies regarding privacy of client information. Attorneys are bound by professional standards of confidentiality that are even more stringent than those required by this new law. Therefore, we always protect your right to privacy.

In the course of providing our clients with financial and tax advice, we receive significant personal financial information from our clients. All information that we receive from you is held in confidence, and is not released to people outside the firm, except as agreed to by you, or as required under an applicable law.

We retain records relating to professional services that we provide so that we are better able to assist you with your professional needs and, in some cases, to comply with professional guidelines. In order to guard your nonpublic personal information, we maintain physical, electronic, and procedural safeguards that comply with our professional standards.

## Credit Reports

We retain the right to intermittently obtain credit reports on you and your company and to inform credit-reporting agencies regarding your account with us.

## Personal Guaranty

All fees and costs incurred on behalf of clients that are entities are personally guaranteed by the owners of the entity.

## Monthly Invoices

M&B typically bills monthly, with our monthly billing cycle ending on the last day of each calendar month. Our statements are mailed shortly thereafter and are payable in full upon receipt. Other billing arrangements must be specifically provided for in advance in our retainer agreement. A statement of account will be forwarded to you automatically each month if you have any outstanding invoices. For matters involving multiple clients (*e.g.* husband and wife) responsibility for payment is joint and several. If you have any questions about the status of your account, please contact us immediately.

For most of our clients, our invoices include the date and description of the services provided and the amount charged based upon the time equivalent value of the task accomplished. Time charges are calculated in tenths of an hour, with a minimum charge of 0.2 hour. We attempt to provide a reasonable amount of detail; however, we do not undertake to provide precise and exhaustive detailing of each and every act on behalf of a client. Please feel free to talk with us about the amount of detail and format you desire for your invoices.

## Payment for Services

Payment for services rendered is due upon receipt of our statement for services. M&B accepts payment in cash or check and also accepts payment by Visa or Mastercard credit cards. If payment or a retainer deposit is made by credit card, a 3% service charge will be applied to payments or deposits in excess of $1,000.00.

## Delinquent Accounts

M&B, like other businesses, has substantial cash demands that require the firm to borrow money if its accounts are not paid promptly. Thus, we add a late payment charge to accounts not paid within thirty days of the invoice date. The late payment charge is currently assessed at a standard rate of 1.5% per month (18% annual rate) on any unpaid balance. In the event that an account becomes delinquent, the

I:\Admin\New Client\_2016\Information for Clients.doc
3/31/16

Doc ID: c88ceeb7751ece086832dd4d9cef8d65ae70889c

firm must employ the same prudent collection procedures used by other businesses. We will cease providing legal services for any client having an outstanding balance for 60 days or more. If any suit, action, arbitration or other proceeding is commenced to collect from you, the prevailing party will be entitled to an award against the other party for reasonable attorney fees and costs incurred in collection. We reserve all liens and security interests allowed by law and reserve the right to disclose your personal financial information to third parties to collect a delinquent account.

## Governing Law

The parties agree that any suit, action, arbitration, or other claims filed for collection or otherwise shall be brought and construed in accordance with the laws of the State of Oregon and the parties submit to the exclusive jurisdiction of any state or federal court located in Oregon.

## Termination of Services

You may terminate the employment of our firm at any time, subject to the payment of any outstanding fees and costs. Likewise, we retain the right to cease performing legal services and to terminate our representation of you for any reason consistent with the applicable ethical rules, including unanticipated conflicts of interest or nonpayment of legal fees and expenses incurred on your behalf. In the event of termination, we may obtain a lien upon any of your documents in our possession, or upon the proceeds of any judgment or settlement entered in your favor, until payment in full is received.

## File Retention

When we have completed work on a legal matter, we will close the matter, electronically store the paper file, and then destroy the paper file unless you provide other disposition instructions at the time of closing the matter. Closed paper and electronic files will not be stored indefinitely.

I:\Admin\New Client\_2016\Information for Clients.doc
3/31/16

Doc ID: c88ceeb7751ece086832dd4d9cef8d65ae70889c

# SERVICES & CREDENTIALS

MOTSCHENBACHER & BLATTNER LLP provides experienced legal counsel to Pacific Northwest privately held companies and their owners, and represents out-of-state corporations with interests in the states of Oregon and Washington. The business, financial, accounting, and construction backgrounds of our lawyers provide uniquely integrated legal and business counsel to our clients' challenges and opportunities.

Partners Anthony J. Motschenbacher, Christopher C.S. Blattner, Gregory J. Englund, and Nicholas J. Henderson have more than 90 years of combined legal experience, including practice with two of the region's largest law firms. Establishing their own firm has given them the opportunity to deliver personalized, high caliber legal counsel without the fee constraints and multiple client conflicts associated with larger firms.

The firm's practice includes business and professional practice formations and dissolutions, contracts, shareholder disputes, business succession planning, mergers and acquisitions, private placements of securities, finance, tax, intellectual property, real estate, employment issues, estate planning, debtor-creditor and bankruptcy, civil litigation and related services. The firm serves the legal needs of a multiplicity of businesses, including privately held corporations, family businesses, medical, dental, and veterinary practices, real estate developers, construction companies, oil companies, high technology firms, artistic and creative businesses, designers, service providers, non-profit organizations, financial institutions and US representation of foreign companies.

Tony Motschenbacher earned his undergraduate degree (a double major in finance and management) from the University of Oregon, ranking in the top 10% of his class. He ranked third in his 1990 graduating class at Willamette University College of Law (*magna cum laude*), serving as Associate Editor of the Willamette Law Review and on the Moot Court Board. Tony heads the firm's business and construction departments. Prior to forming the firm in 1996, Tony was associated with Preston Gates & Ellis' Portland office. Prior to joining Preston, Tony was in private practice at Schwabe, Williamson & Wyatt. Tony is the past vice-chair of the Oregon State Bar Board of Bar Examiners and currently an adjunct professor of Business Law (ACTG 485/585) at Portland State University. Outside of work, Tony is very active with youth sports. He has been a baseball manager for numerous Little League, Babe Ruth and high school baseball teams. He has also been a basketball and baseball coach at Lincoln High School. Tony also served as Trustee with First Christian Church.

Chris Blattner graduated from Willamette University before receiving his Juris Doctorate from Lewis & Clark Law School. In addition to real estate, commercial litigation and business transactions, Chris heads the firm's litigation and intellectual property departments. He also has substantial experience with scuba liability defense litigation, a legal emphasis that has grown from his personal avocation for the sport. Chris is a longtime member of the board of Complementary Healthcare Plans, Inc., a provider of networks of alternative medicine professionals. Chris is a board member and president of the Riverside Golf and Country Club. He also donates times to local charities and his church.

Greg Englund earned both his undergraduate and law degrees at Willamette University, where he was Associate Editor of the Willamette Law Review. After practicing over 20 years with the Portland firm of Hooper, Englund & Weil LLP, he joined the firm in 2013. Greg specializes in representing buyers and sellers in professional practice and business sales, transactions, acquisitions and mergers, and in contracts and entity formation. Greg currently serves as a member of the Board of Trustees for Warner Pacific College. He shares his areas of expertise in regular appearances speaking before dental and other groups.

Nick Henderson earned his undergraduate degree (major in mathematics and minor in business) from the University of Utah and his Juris Doctorate from Lewis & Clark Law School. Nick's practice areas include business and commercial litigation, debtor-creditor law and bankruptcy. Nick assists small businesses with collection issues and bankruptcy litigation, including preference and non-dischargeability matters. Nick's practice also focuses on assisting small businesses and their owners reorganize through Chapters 11 and 13 of the Bankruptcy Code. Prior to joining the firm, Nick was in private practice at Henderson Trauman, P.C.

Alex Trauman earned his undergraduate degree from Oregon State University and his Juris Doctorate from Lewis & Clark Law School. Alex's practice areas include business transactions, business litigation, real estate, and employment law. Alex regularly presents seminars on client development and legal marketing. Prior to joining the firm in 2009, Alex was in private practice at Henderson Trauman, P.C.

Troy Sexton earned his undergraduate degree (double major in philosophy and political science) from Portland State University and his Juris Doctorate from Lewis & Clark Law School. He was an associate editor of Lewis & Clark Law School's nationally acclaimed law review *Environmental Law*, and a Business Law Roundtable Scholar. Troy's practice areas include business transactions, litigation, and bankruptcy. Prior to joining the firm, Troy clerked for the firm and for the Small Business Legal Clinic.

Jeremy G. Tolchin earned his undergraduate degree from University of California, Santa Barbara and his Juris Doctorate from University of San Diego School of Law. Jeremy's practice areas include business, commercial, and real estate litigation, business transactions, and employment matters. Prior to joining the firm, Jeremy was an associate attorney at law firms specializing in insurance defense, business, real estate litigation, and civil litigation.

Tina Walker serves as office manager and paralegal.

MOTSCHENBACHER & BLATTNER LLP is honored to have received the highest rating attainable (AV) in the *Martindale-Hubbell Peer Review Rating* and to be among those attorneys designated as Super Lawyers and Rising Stars in the *Oregon 2016 Super Lawyers Magazine*.

We welcome you to visit the firm's website at *www.portlaw.com*.

# STATEMENT OF POLICY CONCERNING FEDERAL TAX ADVICE

Federal legislation and implementing regulations have established substantial penalties for taxpayers who fail to report on a special form tax return items arising from so-called "reportable transactions." "Reportable transactions" are transactions, events, plans, or other arrangements identified by Congress or the Treasury Department as including elements associated with potentially abusive tax shelters. However, it is well accepted that many legitimate transactions may also include such elements and, therefore, may also be classified as "reportable transactions."

The "reportable transaction" rules also impose duties upon law firms that provide tax advice or services relating to such "reportable transactions." Consequently, it is possible that MOTSCHENBACHER & BLATTNER LLP may become subject to these rules in connection with advice or services provided to you regarding a legitimate transaction or arrangement. If so, MOTSCHENBACHER & BLATTNER LLP will be obliged to notify the Internal Revenue Service that it has provided services in connection with what may be a "reportable transaction." MOTSCHENBACHER & BLATTNER LLP will also be required to maintain a file containing information and documents relating to the transaction or arrangement in question for production to the Internal Revenue Service upon written request. The existence of the attorney-client privilege is no excuse for non-compliance with these rules, although specific items of otherwise disclosable information may be privileged. Prior to taking any steps that may be required under the "reportable transaction" rules, MOTSCHENBACHER & BLATTNER LLP will consult with you concerning the possibility that a given transaction or arrangement may be a "reportable transaction" and, as appropriate, coordinate its disclosure and record-maintenance efforts with any taxpayer reporting obligations to which you may be subject. We will also discuss with you, as appropriate, the possible invocation of the attorney-client privilege. Because these consultations and related reporting and record-maintenance activities can sometimes involve a substantial effort by our attorneys and paralegals and because, by law, they are a necessary consequence of assisting you in connection with a transaction or arrangement that includes one or more elements making it a "reportable transaction," absent special arrangements to the contrary, MOTSCHENBACHER & BLATTNER LLP will treat them as an additional component of its engagement by you, for which you agree to compensate MOTSCHENBACHER & BLATTNER LLP in accordance with this policy unrelated to any special fee arrangements that may otherwise apply.

Independent from the "reportable transaction" rules, the Department of the Treasury has issued regulations that govern practitioners, including MOTSCHENBACHER & BLATTNER LLP attorneys, who provide advice or services to clients in matters that may have federal tax consequences. Congressional legislation enacted in 2004 has confirmed the authority of the Treasury to implement these regulations. One consequence of these regulations is that a practitioner may not provide written advice, including electronic mail messages, upon which a taxpayer may rely for tax penalty protection purposes, unless the practitioner has engaged in a careful review of all potentially relevant facts and has evaluated all of the reasonably applicable tax issues, including judicial doctrines. In addition, under these regulations, certain categories of written advice (so-called "Covered Opinions"), including many opinions intended for penalty protection, must satisfy certain additional requirements. Among other things, Covered Opinions must describe in detail each of the facts and any reasonable assumptions being relied upon, must address every reasonably applicable federal tax issue, including judicial doctrines, and must include, depending upon the circumstances, a variety of mandatory disclosures.

Because of the time, effort, and expense involved in preparing written advice that will satisfy the requirements applicable to Covered Opinions, MOTSCHENBACHER & BLATTNER LLP has adopted a policy now becoming common among many accounting and law firms: MOTSCHENBACHER & BLATTNER LLP will not undertake the special efforts required to comply with the Covered Opinion rules unless you have expressly requested written advice for the specific purpose of tax penalty protection. For this reason, you may expect to receive written documents, including electronic mail messages, stating that any tax advice or recommendation included in the text of the document is not intended for tax penalty protection and that you may not rely upon it for that purpose. This disclaimer is not intended to limit MOTSCHENBACHER & BLATTNER's obligation to you to provide competent tax advice. Its only purpose is to avoid the necessity of complying with the Covered Opinion rules unless you have specifically requested a Covered Opinion for tax penalty protection purposes.

I:\Admin\New Client\_2016\Statement of Policy Concerning Federal Tax Advice.docx
3/30/2016

Doc ID: c88ceeb7751ece086832dd4d9cef8d65ae70889c

# Driving Directions to:
## Motschenbacher & Blattner llp
### 117 SW Taylor Street, Suite 300
### Portland, OR 97204-3029
### Telephone: 503-417-0500
**www.portlaw.com**

**From the north:**
On I-5 southbound:  Shortly after passing the Rose Garden Arena exit and the exit for I-84, take Exit 300B (signs for highways 26E and 99E).  Stay to the right and take the ramp for downtown, which will put you on the Morrison Bridge westbound.  At the west end of the bridge, take the exit on the right for I-5.  Bear right (south) onto SW Front Avenue (also known as SW Naito Parkway). Use the center lane. Drive 3 blocks on SW Front Avenue to SW Taylor Street; turn right (west) on SW Taylor Street.  Drive one block to the intersection of SW 1st Avenue and SW Taylor Street.

**From the south:**
On I-5 northbound:  Take exit 299B (I-405 and US 26 East (left exit), be in the left lane of I-5). Immediately thereafter, take exit 1A (Front Ave./National Historic District).  Stay in the right lane.  At the third traffic light turn right (north) on SW Front Avenue. (also known as SW Naito Parkway).  Drive five blocks north to SW Taylor Street.  Turn left (west) on SW Taylor Street. Drive one block to intersection of SW 1st Avenue and SW Taylor Street.

**From the east:**
I-84 westbound:  Take 99E/City Center exit; stay right at split.  Cross the Morrison Bridge westbound.  At the west end of the bridge, take the exit ramp on the right marked for I-5. Continue right onto SW Front Avenue (also known as SW Naito Parkway). Use the center lane. Drive 3 blocks south on SW Front Avenue to SW Taylor Street; turn right (west) onto SW Taylor Street. Drive one block to the intersection of SW 1st Avenue and SW Taylor Street.

**From the west:**
On the Sunset Highway (US 26) eastbound:  Take the middle lane through the tunnel for the Market Street/City Center exit.  On Market Street, stay in the left lane.  Turn left (north) on SW 12th, 10th, Park, 4th, or 2nd Avenue.  Drive north 6 blocks to SW Salmon Street.  Turn right (east) on SW Salmon Street to SW 1st Avenue.  Turn left on SW 1st Avenue; drive one block to intersection of SW 1st Avenue and SW Taylor Street.



# MOTSCHENBACHER & BLATTNER LLP
### A T T O R N E Y S

117 SW TAYLOR STREET, SUITE 300
PORTLAND, OR 97204-3029
Telephone: 503-417-0500
www.portlaw.com

**LEGEND**
● Smart Park Garages
(enter at 4th Avenue & Taylor Street; 3rd Avenue
& Alder Street; or 4th Avenue & Morrison Street)
■ Other nearby parking lots
Shaded areas are restricted to buses and MAX lines

We are located in the Yamhill Historic District on Taylor Street and 1st Avenue. Metered on-street parking is available. Smart Park garages are close to our offices and offer the best availability and parking rates. Please see the adjacent legend for parking lot locations.



Doc ID: c88ceeb7751ece086832dd4d9cef8d65ae70889c

# IOLTA

## Interest on Lawyers'
## Trust Accounts

*A public interest program*

IOLTA

**Oregon Law Foundation**
*PO Box 1689*
*Lake Oswego, OR 97035*
*(503) 620-0222 x373*
*1-800-452-8260 x373*

Recycled/Recyclable

For your protection, the Oregon Supreme Court requires that all funds of a client which are held by an attorney must be deposited in a trust account separate from the attorney's, and must be kept available for immediate withdrawal. Because most clients' funds which come into the hands of attorneys are relatively small in amount or are to be held for relatively short periods of time, it is not feasible for attorneys to establish a separate account for each client or to invest each client's funds to earn interest. The cost of administering these accounts would be greater than the amount of interest which would be generated. For this reason client funds are held in a common trust checking account.

Under a new program approved by the Oregon Supreme Court, attorneys are now required to deposit clients' common trust funds in NOW (Negotiable Order of Withdrawal) accounts, which permit interest to be paid on checking accounts. Due to the expense and complexity of computing, distributing and accounting for the earnings attributable to each clients funds, it is not practical to pay interest to individual clients. However, attorneys are trustees of client funds and they are not permitted to receive any personal benefit from these client deposits.

The new program approved by the Court provides for the interest income from these accounts to be allocated to the Oregon Law Foundation, a non-profit organization whose purpose is to fund public interest programs in the state designed to improve the administration of justice, provide legal assistance to those who cannot afford it and educate the public about the courts and the law.

The program is called IOLTA, which stands for Interest On Lawyer Trust Accounts. Similar programs exist in most states. Following are the most commonly asked questions about the IOLTA program.

Q. Is there some way that I can get interest on my money held by my lawyer?

A. That is something that you should discuss with your lawyer. If the amount is large enough or to be held long enough to generate enough interest to offset the overhead involved in opening the account, posting the interest to the lawyer's books, reporting the interest to the I.R.S. etc., then you and your lawyer may decide to invest the funds. In most cases, however, these costs would exceed the interest.

Q. Is this going to cost me any money?

A. No. There are no costs to the client as a result of the IOLTA program.

Q. Does my lawyer get any of this interest?

A. No. It is unethical for lawyers to profit from money belonging to their clients. All of the interest will go to the Oregon Law Foundation, which will use it for charitable purposes.

Q. Then what's in it for me?

A. Directly, nothing. Indirectly, we will profit when the law is more efficiently administered, when the courts are more readily available to all people and when the public is better informed about how the courts and the law work. That is why we participate in IOLTA.

Doc ID: c86ceeb7751ece086832dd4d9cef8d65ae70889c